Case number 15-5258. James Coleman, appellant, v. J. Charles Johnson, Secretary of the United States Department of Homeland Security. Mr. Johnson for the appellant, Mr. Simon for the affilee. All right. Mr. Johnson. Good morning. Good morning, Your Honors. May it please the Court. I'm Nathaniel Johnson. I am the representative of the appellant, Mr. James Coleman. The District Court erred in dismissing Mr. Coleman's retaliation claim related to the transfer of Ms. Kara Milhenge as it relates to the position or promotion to the position of supervising production specialist on the basis that my client failed to exhaust administrative remedies. The District Court further committed error when it dismissed my client's retaliation claims on the basis that my client failed to establish material adverse action. The Court further committed error when it denied plaintiff's request to engage in discovery to challenge the veracity of the defendant's dispositive motion and its defense to the retaliation claims. The Court committed error for the following reasons. With regards to the transfer, the Court applied the wrong legal standard when it applied Morgan on the issue of whether or not my client failed to exhaust administrative remedies. As noted in the record, the non-selection was identified in my client's informal complaint subsequently to the formal complaint. The transfer of Ms. Milhenge, which was done administratively as a lateral transfer, flowed directly from the non-selection. The non-selection was filed December 2010 and January 16, 2011. Ms. Milhenge was laterally transferred into the position. And again, it's the position of the appellant that Morgan is not applicable here. This is more of a case of the facts, rather, in the law held in Payne v. Salazar, in which it was not a discreet discriminatory act. But instead, it was part of a series of other retaliatory incidents. Didn't the district court say this was not exhaustive because Mr. Coleman didn't respond to the letter from the EEOC listing the five bases for retaliation? And it said if this wasn't in the list, and they said, if this isn't right, tell us. And he never responded. Is that why the district court said it was not exhaustive? Yes, Your Honor. But again, that's where the court, in our view, committed error because that's applying the Morgan standard. We believe the appropriate standard here is Payne v. Salazar based upon the fact that he identified the non-selection in the December 2010 complaint and following month, the retaliatory action followed the non-selection when Ms. Miller-Hench was put in the position administratively of the same position through a lateral transfer that he was denied. And that's noted in this December. And he explicitly raised it in his formal complaint, correct? That's correct. Twice? No. I saw it twice in the formal complaint. I'm sorry. Yes, it is. But it's the appellee's position that my client was required to amend the formal complaint in May 2011. That's taken this case out of the applicability of Payne. Why did you have to amend it? I mean, if it's formally raised, right? At least as I read it, it's explicitly raised twice in the formal complaint. That's correct. It was raised December, and it was raised when the complaint was formalized in May 2011. The court dismissed it saying that we had a requirement to file it again or to exhaust it. We take the position that it was exhausted when you apply the holding in Payne v. Salazar. I don't have EEO expertise. I was a little confused about how to read this EEO letter because it says the claims that it identifies are JA-127, discrimination on the basis of race and reprisal. And then it lists four things that it calls examples of incidents. And then at the end of the letter it says if you disagree with the claims, not the factual examples, let us know. So are the claims the race and reprisal? That's correct. The other things are, as the letter says, just examples of incidents. That's correct. And the formal complaint itself listed the mill hedge transfer. That's correct. I want to make sure I was reading that right. Appellant also exhausted his administrative remuneration based upon Pace v. Salazar, giving the agency the opportunity to invest the claims and to resolve it before he brought it in federal court. When he provided a statement to the investigator, he identified Ms. Mill Hinch as the person who was selected over him in the position. Subsequently, Ms. Mill Hinch provided a statement to the investigator under oath as far as her having an interest in the position, in fact, knowing that the position was available back in December. So we take the position that the issue was administratively exhausted and that the district court got it completely wrong. With regards to the retaliation claims, we believe that the court applied the incorrect standard, seeking material adverse action tied to a tangible employment action. We believe that the appropriate standard would be Burlington v. White. When you group the series of retaliatory events together, starting with the interrogation, subsequently went to a referral of my client to the security office to possibly revoke the security clearance, a letter of counseling. Then after that, the next incident occurred was Ms. Mill Hinch was later transferred into the position, a position in which my client was denied, a position in which he was interviewed, whereas Ms. Mill Hinch never even applied for the position. And lastly, when he was given a letter of reprimand. These situations or these events lumped together meet the standard for material adverse action based upon Burlington v. White because it simply would dissuade any reasonable person not to engage in the EEO discrimination or retaliation process by filing a complaint. We further believe that the district court error when it denied the appellate's request for discovery. No, it was not a Rule 56D, but nonetheless, we had requested discovery in our opposition. It would have allowed the appellate the opportunity to test the veracity and challenge the credibility of the government's pretext or explanation for pretext. We would ask respectfully that the court remand this case back to the district court and order discovery and trial. All right. Thank you. Mr. Simon. May it please the Court. I'd like to start, I think, by providing a very brief timeline, which I think will help further the discussion. So the non-selection, the competitive process that Mr. Coleman participated in, he was not selected at the end of October 2010. He alleges that he found out that he was not selected from that non-selection in early December 2010, and that he then in mid-December 2010 sought EEO counseling with respect to that non-selection. The Milhant transfer was a lateral reassignment effectuated in mid-January 2011 under a totally different procedure to fill a vacancy that remained open when the competitive process failed to fill all the vacancies. In February 2011, Mr. Coleman filed with the assistance of counsel a formal complaint of discrimination, in which in paragraph 15 on JA 189, he identified his claims. And then in May 2011, the agency EEO office sent a letter to Mr. Coleman's attorney identifying the claims as the EEO office understood from his complaint and asked if they had, if there were any errors in the way they recited his claims to let them know. What did they say those claims were in the letter? Well, the claims were identified as, the court noted that the letter refers to the following examples of incidents your client provides in support of his claims. In support of his claims. Right. The claims are already identified as discrimination on the basis of race and reprisal. So those are the claims. And that list of things are, by the plain terms of the letter, examples of incidents. Correct? No, I think the way... That's what it says, right? That's literally what it says. But the term, when it says, when you say the claims are race and retaliation, that's the conduct, broadly speaking, under Title VII that's at issue. The adverse actions that are being pursued are the items listed on 1 through 5. Does it say it's an exhaustive list or does it say they are examples of incidents? The language of the letter says those are examples. So how would someone who says, reads this and says they've correctly identified by claims as race, discrimination, and reprisal, and on the next page they say, let me know if we got your claims wrong. How would they know they needed to do anything, given that right on the front of his attachment to his formal complaint, he expressly raises retaliation in the terms of, I was not selected for the production supervisor position. So how would he know what he had to do anymore? Again, he's represented by counsel who's experienced... Attorney, I'm telling you, I'm reading the plain language of this, and I've said my claims, you've identified my claims. I couldn't be clearer. It's plain as day that I'm raising this not getting this position as retaliation. I do it in paragraph 15. I do it again over in section D. So why would I think I have to do more? Well, Your Honor, first, the operative document is his formal complaint, and that identifies, it says, describe the actions taken against you that you believe were discriminatory. So that is the list. Now, yes, he does refer to the non-selection in that list, but it's clear from reading that list that he is talking about the non-selection from the competitive process. I'm sorry, whose list? I'm sorry, the list from his formal complaint. I'm sorry, where's the list? That's JA 189. The top paragraph, top two paragraphs. Yeah, but I guess if you wanted to just tell me, the one that I'm hung up on, if I'm misreading it, please do tell me. Additionally, I experienced retaliation after I informed Donald Swain. I initiated contact with the EEO. So he says I experienced retaliation. I contacted the EEO claim, informed them about my EEO claim. Consequently, I was not selected for the production's supervisor position. And this was filed when he knew that instead of having looked around the room and not noticed him there as the other third qualified candidate, they said let's just find another way of filling that job. We'll slot in Darren Milheny. On his version, I'm not of the facts at this stage. It may not be true at all, but that's his story, and it seems to be quite causal, retaliation. I told him, and then I wasn't selected. Well, Your Honor, we know that that reference to consequently I was not selected for the production's position refers to the non-selection in early December 2010. How do we know that? Because the next sentence says subsequently received a letter of counseling. No, it's not the next sentence. It's the same sentence. He's got two things that happened after his EEO complaint. Consequently, I wasn't selected and subsequently received letters of counseling. But within the following sentence he says, subsequently received a letter of counseling on December 30, 2010, which means he's referring in that paragraph to a non-selection that preceded December 30, 2010. The only non-selection that preceded December 30, 2010 is his non-selection in the competitive process. He talks about January 28th, formal letter of reprimand, and if there's any confusion, let's go to JA191. Last line. Additionally, the non-selection failure, the last paragraph, the non-selection failure to promote claim is retaliatory in nature. The non-selection failure to promote that's retaliatory has got to be the one with Karen Milham. Your Honor, I'd make the final point that even in Coleman's own opening brief in this case where he argues about the exhaustion issue on page 15 and throughout that section, the only argument he is making is that the district court erred by not applying the like or related to exception to the failure to exhaust. Well, but 19 to 21 in your brief weren't that narrow. They were just arguing exhaustion about how to read this thing. Then he got to the like or similar. So you all seem to agree. I think that what we were responding to, our argument was that it was not asserted in the formal complaint, and then we addressed the like or related to argument because that's the argument that was pressed here by Mr. Coleman's counsel. So I think even as of the date this appeal was filed, Mr. Coleman through counsel was not asserting that they had actually asserted this claim in the formal complaint. In the event the court finds that it was exhausted, however, there was a subsequent discovery in the district court on Mr. Coleman's non-selection in the competitive process, and that matter has been finally adjudicated against Mr. Coleman, and the facts that form the basis for the district court summary judgment decision on that issue are binding now on Mr. Coleman because this court summarily affirmed that subsequent summary judgment decision. Now those facts establish without dispute that Mr. Coleman applied twice in the competitive selection process. In each occasion, this was in the beginning of 2010 and towards the end of 2010, Mr. Coleman was found not to have the briefing skills that he needed to perform the position. It was also found that, also undisputed, that that non-competitive selection process failed to fill all the vacancies that were open, and that, therefore, the agency had an unmet need. And then they proceeded to put laterally transferred Ms. Milhatch at the position who was already performing briefing as a detailee. Under those set of facts, which have already been finally adjudicated, we submit Mr. Coleman cannot meet the but-for causation standard to establish that the Milhatch transfer was that the but-for cause of Milhatch transfer was his EEO activity rather than the fact that there was an unmet need that two prior vacancies could not fill, that Ms. Milhatch was already performing the position as a GS-14 in a detail role, and that Mr. Coleman already had two chances to establish that he could perform the briefing needed to do the job, and he was unable to establish that he could do so, and, in fact... Is it accurate, though, that if... Because there's different standards for retaliation, so if accepting from a prior decision that he was not more qualified for this position, would that excuse retaliation? Maybe it would mitigate the damages, but would that excuse retaliation if the decision was made for retaliation? Is it because of... Well, he has to establish that his protected conduct, as part of his promulgation case, was the but-for cause, and we submit that at this stage in the process he cannot do so, and there's no discovery that would enable him to do so because he's already been found not to have the briefing skills to perform the position. Ms. Milhatch did have those skills. There was an unmet need, and for all those reasons, those are the contributing reasons for the Milhatch reassignment. You read the prior decision as having found that the sole reason for non-selection in the context of a discrimination claim was lack of qualifications? That he did not... The court upheld the... found that the agency's reason for not selecting Mr. Coleman was that he did not demonstrate sufficient briefing skills during the mock briefing portion of the interview, and, in fact, I believe the district court found that he had performed poorly in both mock briefings that he had done throughout 2010 and also found that his supervisor, Ms. Roehner, could not have acted with at least racial or animus because at that time there had been no protective conduct. The district court spoke broadly and could not have acted with animus towards Mr. Coleman because she gave him a second chance to prove that he could do the job when she interviewed him for the second time, and Mr. Coleman's testimony, again, not disputed, that's referenced in the district court's opinion, was that he didn't do anything between the first interview and the second interview to try to improve his briefing skills. So there is nothing in the record that would suggest that Mr. Coleman would have been in a position to compete and be seriously considered for the GS-14 position when the lateral transfer of Ms. Billhenge occurred. And if I have – I know I'm over time. If I would just like to make one other point, if I could. Go ahead. Which is that in Appellant's brief, they keep saying that Mr. Coleman was the third-rank candidate. There is nothing in the record to support that assertion. I think the record is that he performed poorly in his briefing. That's not only in the record, but that's been established by the prior decision of the district court. And it is alluded to in the prior summary judgment record, ECF number 33-3, pages 8 and 9, ECF pages 8 and 9 of the Donald Swain deposition. Donald Swain – and I'm sorry, this is not in the record. This is on the docket of the prior summary judgment file, ECF 33-3. Donald Swain, who was on the interview panel, said in his mind, at least, if there was a third-rank candidate, it would have been a female applicant. So, again, there's – But I don't have it in front of me. I remember seeing someone saying that they selected – in the first – I'm sorry, two rounds. In the fall round, they selected the three qualified candidates, and those were the two – I believe the other person and Mr. Koltman. It was described as the three qualified candidates. He was identified on the list of qualified candidates. Three qualified candidates. Right, but that was in the district court's first decision. The district court was, I believe, speaking just generally that of the – on the record before the district court, there were three people. The relevant facts for that district court in that decision were that there were three people interviewed, not that that was limited to three people, not that the interviews were limited to three people. Oh, more than three people were interviewed? That's what the record established in the discovery that led to the subsequent summary judgment. Are there any further questions? We ask that the court then affirm the judgment of the district court. Thank you. Does Mr. Johnson have any time left? Mr. Johnson has a minute and 45 seconds. Okay. I think it needs to be noted that Mr. Koltman did meet the cert. He was one of the finalists. With regards to the assertion made about his performance, in the absence of his supervisor who would take leave from military leave, military purpose, and so forth, it was Mr. Koltman who she selected to be the team lead in her absence. Well, you argue about the need for discovery. That's correct. But you've already had discovery on this whole selection process and an adverse determination that's binding here that he was – his non-selection was based on qualifications and that someone else was more qualified. So doesn't that close the door? Doesn't that close the door on the retaliation campaign, given that that's got to be even narrower by four causations? Well, it does not close the door because of the fact that we did not have the opportunity because the way that the issues in the failure to promote based on discrimination, it was defined that we did not or were not afforded the opportunity to test the veracity of the pretext on retaliation. You had every incentive to show that it was some reason other than qualifications on which the decision was made. I don't know what more discovery you would have had. If you could explain to me what you would have done. You already had, I assume, depositions and all that kind of stuff. What would be done differently is we would like to have the opportunity, for instance, to take the deposition of Ms. Milhinch. We would like to understand – and we were not permitted to go into this line of questioning, but we would like to find out why, if she was selected for the position, if she was considered to be qualified, why was she not encouraged to ever apply for the position? Did you depose her for the discrimination? No, we did not. And again, the issues before the court was not retaliation. They were narrowly defined on the issue of the failure to promote. And I see that my time is up. All right. Thank you.
judges: Henderson, Tatel, Millett